36 C.C.P.A.(Patents)
**Application of LAIDLEY.**

**Patent Appeal No. 5596.**

United States Court of Customs
and Patent Appeals.

Sept. 30, 1949.

Fred H. Miller, Los Angeles, for appellant.

W. W. Cochran, Washington, D. C. (H. S. Miller, Washington, D. C., of counsel), for Commissioner of Patents.

Before GARRETT, Chief Judge, and JACKSON, O'CONNELL and JOHNSON, Judges.

GARRETT, Chief Judge.

This is an appeal from the decision of the Board of Appeals of the United States Patent Office affirming the rejection by the Primary Examiner of all the claims, numbered respectively 10, 11, and 12, in appellant's application (Serial No. 556,040) for patent on alleged new and useful improvements in "Liquid and Gas Separators."

The brief for appellant states that the devise is "of the type used in oil fields to effect a separation of oil from gas," but as is said in the brief of the Solicitor for the Patent Office: "None of the claims are limited to 'oil.' They specify 'liquid' * * *." The specification states that the apparatus "has been primarily designed for use in those separators used for separating oil and gas although it may be employed in other liquid and gas separators wherein similar conditions and circumstances exist."

Claim 10 was selected by the board as illustrative. It reads: "10. A liquid and gas separator comprising a tank providing a chamber within which primary separation of the constituents of the influent may take place, means for introducing a mixed gas and liquid influent into said chamber, mist extracting means for extracting mist from the gaseous constituent separated in said chamber on its way to the gas outlet from the chamber, said mist extracting means having provision for collecting the extract mist, and means for withdrawing the collected extracted mist from the mist extractor including a conduit leading from the collecting means for the mist to the influent introducing means and arranged to have flow induced therethrough by the influent whereby the extracted mist is returned to the influent and proceeds with the liquid portion thereof, there being outlets from said tank for gas and liquid respectively."

Claims 11 and 12 recite that the conduit connecting the mist extracting means with the inlet means is continuously open and that the mixed gas and liquid influent is continuously introduced into the tank for primary separation. Claim 11 locates the outlet for the liquid adjacent the bottom of the chamber and claim 12 locates the outlet for the mist extracting means "within the tank between the level where the influent is introduced and the gas outlet" which latter is at the top of the chamber, being indicated in Fig. 1 of the drawing by the numeral 24.

The references cited by the Primary Examiner and repeated in the decision of the board are the following four patents: Mumford, 1,747,314, Feb. 18, 1930; Mount, 1,916,065, June 27, 1933; Walker, 1,986,168, Jan. 1, 1935; Lear, 2,223,112, Nov. 26, 1940.

It will be observed from the illustrative claim that appellant's tank has a primary and a secondary separation chamber. The mixed oil (when the liquid is oil) and gas, referred to in the application and claims as an influent, is introduced into the primary chamber where there is a separation of a portion of the oil, which portion settles to the bottom of the chamber, and the gas, which rises to the upper part of the chamber. The gaseous constituent which so rises contains some oil in

the form of mist, and the secondary chamber comprises means for extracting the mist from the gas. The specific feature claimed by appellant to constitute invention consists of means for withdrawing the extracted mist from the extractor through the conduit which connects a tube (in which the extracted mist is collected) with the inlet pipe through which the original mixture of oil and gas is admitted to the primary chamber, the arrangement of the connection being such that the flow of the influent functions as an aspirator—that is, it aspirates the mist collected from the tube and the oil of the mist is conveyed to the inlet where it is added to the mixture entering the separation chamber.

It is said in appellant's application: " * * * In this manner, the energy of the influent is utilized to induce a reduction in pressure in the drainpipe in opposition to the pressure drop occasioned by the gas passing through the mist extractor. In other and simpler terms, the jetting of the influent creates a suction in the drainpipe which will remove the drainage therefrom and mix it with the influent for a re-separation therewith when the influent is filmed on the walls of the tank. It will thus be appreciated that although there may be a considerable pressure drop between the exterior of the mist extractor and the gas outlet 24, that this pressure drop is compensated for or neutralized by the suction created by the jetting of the influent so that under no circumstances will drainage be caused to flow upwardly through the drainpipe and into the mist extractor. Consequently, the mist extractor can freely drain at all times and the capacity of a given size of separator may be materially increased. If the quantity or velocity of flow into the separator is variable and should increase with a consequent greater separation of mist in the mist extractor, this is automatically compensated for by the jet action of the influent creating greater suction in the drainpipe. In this manner, withdrawal of drainage from the drainpipe is caused to take place in more or less direct proportion to the amount or velocity of the influent."

The Primary Examiner rejected the claims first on the patent to Lear. He "further" rejected them "on either the patent to Mount Fig. 11 or Walker in view of the patent to either Lear or Mumford."

The Lear patent relates to apparatus for pumping and separating gas and liquid bodies such, for example, as the apparatus used at "filling stations" where gasoline is dispensed. The material features of the apparatus seem to be (1) a primary separator, (2) a float chamber which the Primary Examiner held "acts as a vapor condenser and in effect a mist separator," (3) a venturi tube, and (4) a recovery line which connects the float chamber with the venturi throat, through which line the influent stream to the primary separator passes. The Primary Examiner held that the arrangement of the flow passages in the float chamber is such as inherently to effect separation of entrained liquid from the gases flowing through it; that the fluids change their direction of flow at certain points, which is stated to be a commonly used expedient for separating entrained liquid from gas; and furthermore that the large increase in the area of the flow passages as gas escapes from a certain pipe into the float chamber "is known to have a similar separating action." He also held the "continuously open" feature of the conduit defined in claims 11 and 12 (it does not appear in claim 10) not to be a patentable limitation, since the recovery line is continuously open during the interval of time in which the recovered gasoline is being withdrawn.

It is perfectly clear that the Primary Examiner rejected all the claims on the Lear patent alone, and in the brief of the Solicitor for the Patent Office the view is expressed that the board affirmed such rejection. Appellant's reasons of appeal 1 and 2 seem to acquiesce in such view.

It is true that the board did not express dissent from that ground of rejection, but it is not clear to us that it actually approved it.

The board said: "Furthermore, *if* the [float] chamber 40 of the Lear separator *could be* considered a mist extracting

means, it would appear that the claims would read directly on the Lear patent in the manner set forth in the statement of the Primary Examiner." (Italics ours).

We do not find where the board definitely held that the float chamber of Lear could be considered a mist extracting means.

It said, in substance, that Lear does not describe the float chamber of his separator as a means for separating mist from the gas "but instead describes it as an overflow chamber intermittently operated by the float 47 to permit return of the liquid therein to the influent mixture through the conduit 50," and seemingly upon the basis of that finding agreed with the Primary Examiner's second ground of rejection, saying that "it would not involve invention to substitute the specific form of liquid removing means disclosed in the Lear and Mumford patents for the liquid removing means disclosed in the Walker et al. and Mount et al. patents."

It is possible that there fairly might be read into the board's decision a holding of equivalency between the mist extracting feature of appellant's application and the intermittently operating overflow chamber of Lear, but we think this too doubtful to be justified, and deem it imperative that we consider the second ground of rejection.

It may be said at this point that the Mumford patent does not relate to the separation of oil from gas, but the separation of steam from water. It is conceded in the brief for appellant, however, that Mumford's separator is analogous art, but it is pointed out that Mumford has no teaching of connecting a particular "return" pipe to the influent-introducing means of the separator, and it is argued that "if the Mumford patent is considered in its entirety or as a steam boiler within which a steam separator is disposed, * * * it is taken from a non-analogous art." It is contended that the patent in its entirety relating to steam boilers is entirely too remote to teach any one working in the oil and gas separator art how to drain constantly the mist extractor to the best advantage despite the pressure drop existing in the mist extractor.

The Mumford patent is obviously a secondary reference, and if the appealed claims were limited to an influent composed of oil and gas we think the argument as to remoteness should be sustained, and inasmuch as the specification does limit the employment of the separator to mixtures containing liquids wherein there exist "conditions and circumstances" similar to the conditions and circumstances existing where the liquid element is oil, we think it reasonable to hold that the Mumford patent is too remote to be given force as a controlling reference here. The difference between the nature of oil and similar fluids and the nature of water, and the difference between the nature of steam derived from water and the nature of gas belonging to oils and similar liquids is, in our opinion, too great to justify classifying them together in art affecting them. See In re Reichel, 84 F.2d 221, 23 C. C. P. A., Patents, 1293, with pertinent cited cases.

Both the Mount et al. patent and the Walker et al. patent relate to liquid and gas separators, oil being the liquid particularly named in the specifications.

Mount et al. disclose a collector of extracted mist connected by means of a tube to an outlet through which oil passes after being separated from the sand, mud, and gas with which it is combined in wells, the connection being made in such a manner that the effluent stream of oil aspirates the extracted mist.

Walker et al. disclose a tank having inlets for the liquid (oil being named) and means for separating the liquid from the gas. The gas passes out from a discharge pipe leading into a pan and that liquid passes out from a drain pipe leading to a container from whence eventually it passes to and through an outlet pipe. The board held that either the pan referred to or the collecting chamber located near the bottom of the tank may be taken to be the means for collecting the extracted mist.

It may be said that both the Mount et al. and the Walker et al. devices are much more complicated than appears from the meager descriptions hereinabove recited, but it is deemed unnecessary to enter upon a more elaborate analysis, because the dif-

ferences between those patents and the device defined in the claims are substantially all that require consideration and those differences are not in dispute.

Relative to the Walker et al. patent the board states: " * * * The sole difference between the disclosure of the application and that of the patent, insofar as it relates to the claimed subject matter, lies in that, in the application and in the claims, the conduit leading from the collecting means 25 terminates in the oil and gas inlet device which, by a venturi action, removes the liquid collected in the drain pipe 25 and adds it to the mixture of oil and gas entering the separation chamber, while in the patented construction, the liquid from the mist collecting means is conducted to the liquid outlet and the conduit which leads from the collecting means for the mist, leads to the liquid outlet instead of to the influent introducing means."

The Mount et al. patent is also described as disclosing the liquid collected from the mist conducted to the liquid outlet and the conduit from the mist collecting means leading to the liquid outlet instead of to the means through which the mixture of liquid and gas—the influent—is originally introduced into the tank.

In appellant's arrangement, as has been explained, the liquid derived from the mist is discharged into the pipe which serves as an inlet for the original mixture.

The question is whether it constituted invention to provide the discharge of the mist, or the liquid derived from the mist, into the introductory inlet rather than through the oil outlet.

There is no suggestion that such a change would not be inventive per se in the absence of prior art, but it was held, in effect, that because of the showing in the respective patents to Lear and Mumford no invention would be involved in combining their teachings with the disclosures of Walker et al. or Mount et al.

 Since, in our opinion, the Mumford patent is too remote to be properly treated as a controlling reference here, the controversy is reduced to a consideration of the Lear patent as a secondary reference. For the reasons hereinbefore indicated, we are not satisfied that the board approved the rejection upon the Lear patent alone. We may go further and say that we are not satisfied that a holding to that effect would have been sound. Upon the facts appearing, we feel constrained to disagree with the second rejection which the Primary Examiner applied and the board approved.

It seems to us that appellant has made a contribution to the art different from and independent of prior art and that it amounts to invention.

It follows that in our opinion the decision of the Board of Appeals affirming the rejection of the Primary Examiner should be reversed and it is so ordered.

Reversed.

By reason of illness, HATFIELD, Judge, was not present at the argument of this case and did not participate in the decision.